IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDWARD O'HARA, : C.A. 09-500-RGA
    Plaintiff, :
:
v. :
:
THE PREMCOR REFINING GROUP, INC., :
    Defendant/Third Party Plaintiff, :
:
v. :
:
GRIFFITH ROOFING & WATERPROOFING, :
INC., :
    Third Party Defendant. :

## MEMORANDUM OPINION

---

Timothy E. Lengkeek, Esq., Wilmington, Delaware, Brian S. Chacker, Esq., Philadelphia, Pennsylvania; Attorneys for Plaintiff Edward O'Hara.

Sean J. Bellow, Esq., Wilmington, Delaware; David A. Felice, Esq., Wilmington, Delaware; Attorneys for Defendant The Premcor Refining Group, Inc.

---

October __, 2012
Wilmington, Delaware

1

*[signature]* 
ANDREWS, United States District Judge:

This is a motion for summary judgment. Plaintiff Edward O'Hara brings a negligence action against Defendant The Premcor Refinery Group, Inc. as a result of injuries he suffered at a Premcor refinery plant on July 20, 2007. (D.I. 1). O'Hara was working as a roofer for his employer, Griffith Roofing & Waterproofing, Inc. Premcor had contracted with Griffith Roofing to provide roofing services on the Water Treatment Center at Premcor's Delaware City refinery.[1] On the day in question, O'Hara and his coworkers left the Water Treatment Center to dump debris. On the way back, O'Hara and his coworkers stopped at a designated smoking area for a smoke break. While in this area, O'Hara stepped onto a manhole cover. The manhole cover flipped up, causing O'Hara's right leg to fall into the manhole. O'Hara suffered injuries to his knee as a result and brings suit against Premcor for negligence. Premcor now moves for summary judgment on the negligence claim. (D.I. 122).

The Court may grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Premcor brings two arguments in support of its motion for summary judgment: (1) Premcor had no duty to ensure O'Hara's safety during the performance of Griffith Roofing's contracting work and (2) the manhole cover posed an open and obvious danger that O'Hara should have recognized. The Court addresses each of these arguments in turn.

---

[1] Griffith Roofing was brought into this suit by Premcor as a Third Party Defendant, but is not a party to this motion.

2

Premcor argues that it had no duty to ensure O'Hara's safety and it thus should be granted summary judgment. Premcor acknowledges that it had a general duty to maintain the premises in a reasonably safe condition and to warn Griffith Roofing employees of all defects of which it knew of or had reason to know. Premcor argues, however, that a landowner has no duty to protect an employee of an independent contractor from the very hazard created by the doing of contract work, unless the owner retains active control over the manner in which the work is performed, citing *Seeney v. Dover County Club Apartments*, 318 A.2d 619, 622 (Del. Super. 1974). In *Seeney*, the contractor was hired to dig ditches and install sewer pipeline. *Id.* During this activity, the walls of a ditch where the contractor's employee was working collapsed on the employee, injuring him. *Id.* at 620. The owner of the grounds was not liable, as he retained no control over how the ditch digging was accomplished or the safety methods used. *Id.* at 622. To the contrary, the contractor was hired as the ditch digging expert and was in the best position to ensure reasonable care while digging ditches. *See id.* Thus, *Seeney* held that a landowner is not responsible for injuries suffered by an employee of an independent contractor hired to work on its property when the injuries result "from the very hazard created by the doing of the contract work." *Id.* at 621.

In this case, Premcor contracted with Griffith for roofing services. O'Hara was not injured, however, while doing any roofing. O'Hara was injured in a fall down a manhole while accompanying his coworkers to a smoke shack some distance from the roofing site. There was nothing special about O'Hara's roofing work that made him especially at risk for falling into the manhole or anything about Griffith's activities at the Premcor site that put Griffith in a position to inspect manholes. He thus was not injured by "the very hazard created by the doing of the contract work." Had O'Hara been injured, for example, in a fall from the roof of the Water

3

Treatment Plant while roofing, it would be analogous to *Seeney*, but these are not the circumstances here. The manhole posed an equal danger to anyone passing through that area of the facility, roofers and non-roofers alike.

Premcor quotes *In re: Asbestos Litig. (Helm)*, 2007 WL 1651968, *17 (Del. Super. 2007) in an effort to bolster its argument as follows:

> Contractors are hired to perform a job and they are expected to take steps to protect themselves and their employees from known hazards of the job, and known hazards of the job site, without direction from the landowner.

Nothing here justifies the conclusion that Premcor had no duty to maintain safe premises for Griffith Roofing employees. This quote highlights the necessity for independent contractors to be wary of *known* hazards related to their contract work. As discussed, there is no evidence that the manhole cover was a known hazard of the roofing work or the job site. Premcor thus fails to establish that O'Hara was injured due to a risk created by the "very hazard created by the doing of the contract work."

Premcor next argues that Griffith Roofing contractually agreed to provide for the "ultimate safety" of its employees, thus absolving Premcor of its duty to maintain safe premises. Entitled "Contractor Safety Guidelines," the agreement states, "CONTRACTOR has the ultimate responsibility for the safety of their personnel at the job site in accordance with the COMPANY rules and OSHA 1910.119(h)(3)(iv)." (D.I. 123, Exh. D at 4). It further states,

> CONTRACTOR will maintain safe work conditions at all times. In addition to being constantly alert for unsafe or potentially unsafe conditions, CONTRACTOR must check the work daily at the beginning and throughout each shift to ensure safe work conditions. Any unsafe working conditions must be corrected or reported to the COMPANY Representative immediately.

4

(*Id.* at 4). Premcor argues that this agreement relieved Premcor of the duty to keep the premises safe for Griffith Roofing employees. The Court disagrees with this interpretation. There is no indication that the parties intended for Griffith Roofing to completely assume Premcor's general landowner duties. The agreement rather speaks to Griffith Roofing's responsibility to maintain safe "work conditions" and safety at the "job site." It thus highlights Griffith Roofing's duty to maintain responsibility for the safety of its roofing work and the foreseeable effects of its presence at the Water Treatment Plant job site. As explained earlier, O'Hara was not injured due to a condition of his roofing work, as any risk posed by the manhole cover was a danger completely unrelated to roofing. Further, the accident did not occur at the roofing site itself. The injury occurred due to a condition outside of Griffith Roofing's control. It would be unreasonable to require Griffith Roofing employees to inspect every manhole located in areas of the refinery where its employees were authorized to travel as part of Griffith Roofing's obligation to maintain safe work conditions. For these reasons, the Court does not believe that the agreement should be broadly read as causing Griffith Roofing to assume all of Premcor's safe workplace obligations to Griffith Roofing's employees.

Griffith Roofing further argues that the agreement was limited to ensuring that Griffith maintained responsibility to follow certain Premcor and OSHA protocols in relation to working near the dangerous chemicals of the refinery, as opposed to an agreement divesting Premcor of its premises obligations. The Court agrees. The agreement states that the "CONTRACTOR has the ultimate responsibility for the safety of their personnel at the job site in accordance with the COMPANY rules and OSHA 1910.119(h)(3)(iv)." Griffith thus did assume "ultimate responsibility" for the safety of its personnel, but only in connection with following Premcor and OSHA rules. This OSHA section relates purely to working around dangerous chemicals, as

5

exemplified by the section's defined "Purpose," which follows: "This section contains requirements for preventing or minimizing the consequences of catastrophic release of toxic, reactive, flammable, or explosive chemicals." 29 CFR § 1910.119. Subsection 1910.119(h)(3)(iv), specifically referenced by the agreement, requires that "the contract employer shall assure that each contract employee follows the safety rules of the facility including the safe work practices required by paragraph f(4) of this section."[2] This indicates that the agreement's applicability was limited to ensuring Griffith Roofing's responsibility for complying with rules in relation to risks of dangerous chemicals. The risk posed by a manhole cover is clearly unrelated to safety rules regarding dangerous chemicals and Premcor puts forth no specific OSHA or Premcor safety rule violated by Griffith Roofing or O'Hara. This indicates that the agreement does not control liability regarding O'Hara's injuries.

Premcor argues that the presence in the agreement of drug testing for Griffith Roofing employees undermines the argument that the agreement only applied to dangerous chemicals, but that is not a true inconsistency. It makes perfect sense for a contract regulating the safety of dangerous chemicals on a property to also ensure that all those allowed to work near those chemicals are not under the influence of illegal drugs. Further, even if the Court agreed that the work agreement should be read more broadly, it still would not extend to the risk of the manhole cover, which was not a Griffith Roofing "work condition" or part of the Griffith Roofing "job site." For all these reasons, the Court holds that Premcor fails to establish that it contractually

---

[2] Paragraph f(4) details safe work practices as follows:
    The employer shall develop and implement safe work practices to provide for the control of hazards during operations such as lockout/tagout; confined space entry; opening process equipment or piping; and control over entrance into a facility by maintenance, contractor, laboratory, or other support personnel. These safe work practices shall apply to employees and contractor employees.
29 C.F.R. § 1910.119f(4).

absolved itself from the duty to maintain safe work premises through agreement with Griffith Roofing.

There is further reason to believe that had such a complete delegation occurred, as argued by Premcor, it would not be effective as to bar O'Hara's suit. *Argoe v. Commerce Square Apartments Ltd. Partnership*, 745 A.2d 251 (Del. Super 1997) states that a landowner may absolve itself from the duty to maintain safe premises, but only where the "owner relinquishes possession and actual control over the property to another entity." *Id.* at 254-55. Here, Premcor never relinquished possession or actual control of the smoke break area where O'Hara was injured. Although Premcor correctly points out that *Argoe* specifically pertained to finding a landowner vicariously liable due to the omissions of its agent where the agency agreement delegated grounds keeping duties, *Argoe* sets out general principles applicable to a broader set of circumstances than its instant facts. *See id.* As applied to this case, these principles further suggest that Premcor's duty to maintain safe premises was not absolved by the agreement. For all these reasons, the Court holds that Premcor fails to establish that it had no duty to maintain safe premises for Griffith Roofing employees.

This brings the Court to Premcor's second argument in support of its motion for summary judgment. Premcor argues that summary judgment should be granted because it had no duty to warn of open and obvious dangers. Premcor argues that it is undisputed that any danger the manhole posed was so obvious to a "person of ordinary care and prudence" that it had no duty to warn O'Hara. *See Niblett v. Penn R.R. Co.*, 158 A.2d 580, 582 (Del. Super. Ct. 1960). To support this argument, Premcor cites testimony from O'Hara's foreman, Calvin Hershberger, who was present at the accident. Hershberger testified that the manhole cover looked "funny"

7

before O'Hara stepped on it.[3] Premcor further cites testimony from O'Hara's expert, John Posusney, that if someone had inspected the manhole cover, they would have noticed it was not even or flush.[4] According to Premcor, there thus is no issue of material fact as to whether the manhole danger was open and obvious.

O'Hara argues that, at a minimum, there is a factual dispute as to whether the manhole cover was an open and obvious danger. The Court agrees. Although Hershberger testified that the manhole cover looked "funny," he also testified that "it looked like something you could step on."[5] Further, Robert Stewart, another Griffith employee present at the accident, testified that the manhole cover looked safe to step on.[6] Finally, the Court disagrees with Premcor's characterization of O'Hara's expert testimony. Posusney testified that the manhole cover's

---

[3] Q. Did it look like [the manhole cover] fit properly – did you even notice it was there before the fall?
A. I mean I noticed it was there, we said that's a funny looking manhole cover.
(D.I. 123, Exh A at 62:23-63:4).

Q. In what way did the manhole cover look funny?
A. It was small. I mean, I just thought it looked odd.
(*Id.* at 69:21-24).

[4] Q. The second bullet point; in that second bullet point there's a reference that the manhole cover was not even and flush. Do you see that there?
A. Yes.
Q. Can you tell me what you meant by not being even or flush?
A. Well, it was – in other words, that thin 3/32 of an inch piece of metal, if you were to put it on this table, it would rock because – even though it's a planer structure, it's not – it's not perfectly planer. It's not within one X Y coordinate. It actually has a third coordinate, which, in effect, causes it to rock because it's not flush.
Q. Mr. Posusney, if it was not even or flush, wouldn't that mean that it would have been visible?
A. Yes, if someone inspected it, they would see that, yes.
(D.I. 123, Exh. B 116:14-117:7).

[5] Q. Did [the manhole cover] look like it was secure?
A. I mean, it looked like it was something you could step on.
Q. That's my question. Was there any indication that it would give in if you stepped on it?
A. No.
(D.I. 129, Exh. B at 63:05-14).

[6] Q. Did it look to you like it was safe for someone to step on?
A. It looked fine to me.
(D.I. 129, Exh. D at 30:12-14).

8

defect was discoverable upon *inspection* of the manhole cover. This implies that the owner of the premises could have eliminated the danger with reasonable care of the premises, not that a random person walking through the area would have recognized the manhole cover as an open and obvious danger. For all these reasons, the Court holds that there is a question of fact regarding the open and obvious nature of the manhole cover. *See Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1092 (Del. 2000).

Premcor's motion for summary judgment is DENIED. An order consistent with this opinion will follow.